UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | DOCKET NO. 22-CR-10261-DJC |
| | ) | |
| JOEL ARMENTA CASTRO | ) | |

**DEFENDANT'S SENTENCING MEMORANDUM**

Joel Armenta Castro submits this sentencing memorandum to urge the Court to sentence him to a prison term of 30 months followed by 1 year of supervised release.[1] For the reasons that follow Mr. Armenta Castro asks this Court to vary from the guidelines. Such a sentence is consistent with the factors set forth in 18 U.S.C. § 3553(a) and will result in a sentence that is sufficient, but not greater than necessary, to effectuate the purposes of sentencing. *United States v. Kimbrough*, 128 S.Ct. 558 (2007); *United States v. Booker*, 125 S.Ct. 738 (2005); *United States v. Martin*, 520 F.3d 87 (1st Cir. 2008); *United States v. Rodriguez*, 527 F.3d 221 (1st Cir. 2008).

I. HISTORY AND CHARACTERISTICS OF MR. ARMENTA CASTRO AND THE NATURE AND CIRCUMSTANCES OF THE OFFENSE

   a. *Childhood and Upbringing*

At the time of his arrest, and in the months leading up to that arrest, Mr. Armenta Castro was living in Los Mochis, Mexico with his parents, his sister and his daughter. He grew up surrounded by the love of both of his parents. Growing up his dad worked (and still works) and his mom stayed home to care for Joel and his two younger sisters, Mayra and Nancy. Despite not witnessing any abuse or violence within his home, Mr. Armenta Castro did witness violence in his community.

---

1 We request a limited term of supervision because of the certainty of Mr. Armenta Castro's deportation.

1

b. *Education and Employment*

Mr. Armenta Castro graduated high school in 2010. Following high school, he completed two years at *Instituto Tecnologico de Los Mochis*. He then went on to earn a job with the Comisión Federal de Electricidad ("CFE"), where his father also currently works. The CFE is Mexico's only federal electricity commission. It is a good and stable federal job. Mr. Armenta Castro went through extensive training in thermal electricity and operating and maintaining thermal electric power stations. "…[H]e has shown exemplary performance…," as the General Secretary of the Electrical Workers Union writes in his letter to the Court.[2] Prior to Mr. Armenta Castro's incarceration he was at the pinnacle of his employment, having achieved the highest level in operating thermal electric power stations that a person can achieve short of having a college degree. Once Mr. Armenta Castro is released, his employer has welcomed him back to continue working.

c. *Children*

In 2013 Mr. Armenta Castro married, seven years later divorce followed due to infidelity on behalf of his then-wife. Despite the divorce, the product of the union between Mr. Armenta Castro and his ex-wife is their now ten-year-old daughter, Ashley Nathalie Armenta Fuentes. Prior to Mr. Armenta Castro's incarceration, he and his ex-wife co-parented Ashley well, sharing the responsibilities for her upbringing. Mr. Armenta Castro was Ashley's primary financial provider, he paid for her schooling, her school supplies, food, clothing and healthcare. He also had majority custody of her. Mr. Armenta Castro is proud to be a father. He has a very good relationship with Ashley and her emotional well-being has been at the forefront of his mind since the day of his arrest. In her letter, Ashley writes about her father, "…he is everything to me

---

2 Letters have been translated from Spanish to English by our staff investigator, Winfred Meadows-Marquez.

because he is the best father in the world and I want him to already be home because he is the person that I need the most." Mr. Armenta Castro remains eager to get back to Mexico to be with her and the rest of his family.

    d. *Future Plans*

Mr. Armenta Castro was born in Mexico and it is his home. Mr. Armenta Castro plans to return and stay in Mexico once he is released. While in jail for over a year now, he has only been able to speak to his family once a week for five minutes at a time. He wants to be back in his country with his loving parents and daughter. He enjoys his job and is looking forward to going back to work and having a state of normalcy return to his life. He has been longing to return home to be with his family.

II.    THE SENTENCING GUIDELINES

The Pre-Sentence Report (PSR) provides the Court with guideline range of 70-87 months. Mr. Armenta Castro asks the court to prospectively adopt the United States Sentencing Guideline Amendment §4C1.1(a)(1) which provides for a two point offense level decrease for offenders like Mr. Armenta Castro, who have zero criminal history points.[3] The PSR has calculated Mr. Armenta Castro's total offense level to be 27, prospectively applying the amendment would bring him to a total offense level of 25 bringing his guideline range then to 57- 71 months. We base our 30-month sentence on statistical evidence that we see about defendants similarly situated to Mr. Armenta Castro. We base the 1 year of supervised release recommendation on the fact that Mr. Armenta Castro will likely be deported once his sentence is complete.

---

3 United States Sentencing Commission, *Amendments to Sentencing Guidelines*, 45 (2023)

Mr. Armenta Castro is a Hispanic male. Hispanic male offenders received sentences 5.3% longer than those of White male offenders in a study that took place between October 1, 2011 through September 30, 2016.[4] Additionally, with zero criminal history points, Mr. Armenta Castro falls outside of the 69.3% of drug trafficking offenders that have at least one prior conviction.[5] Only 30.7% of offenders with zero criminal history points recidivated within eight years.[6] The recidivism concerns that the Court may have with other defendants should not be a concern when assessing whether Mr. Armenta Castro will recidivate. Unemployment is highest within the first two years of release but jobs are critical in order to reduce recidivism and help incarcerated people quickly integrate back into society.[7] The majority of individuals released from prison face limited employment opportunities which affects their ability reintegrate into society.[8] Unlike other defendants who face giant employment hurdles when released, Mr. Armenta Castro will not. He has his job to go back to in Mexico once he is released. While the job has been promised to him, it is logical to conclude that the longer Mr. Armenta Castro is detained the less likely it is that the job will remain open to him. Given the statistical relevance of employment in the recidivism data, allowing him to return to this excellent and stable career significantly improves public safety.

Mr. Armenta Castro also has a loving family to go back to once he is released. Fathers who maintain relationships with children are less likely to recidivate.[9] Mr. Armenta Castro has

---

[4] United States Sentencing Commission, *Demographic Differences in Sentencing*, 6 (2017)
[5] United States Sentencing Commission, *The Criminal History of Federal Offenders*, 5 (2018)
[6] United States Sentencing Commission, *Recidivism Among Drug Trafficking Offenders*, 30 (2017)
[7] Lucius Couloute & Daniel Kopf, *Out of Prison & Out of Work: Unemployment among formerly incarcerated people*, (2018)
[8] Kevin Schnepel, *Do post-prison job opportunities reduce recidivism?(Do post-prison job opportunities reduce recidivism?*, IZA World of Labor 2017: 399, 1, 1, (2017)
[9] Solangel Maldonado, *Recidivism and Parental Engagement*, 40 Family L. Q. 191 (2006) ("The literature … suggests that ex-convicts who share close relationships with their children are less likely to recidivate than those who do not.").

spoken to his daughter at least once a week since his arrest, even if only for a minute. After January 2023, Wyatt Detention Facility ("Wyatt") lifted their COVID-19 restrictions for in person visits and the free calls went from three times a week for 20 minutes to one time a week for five minutes. Mr. Armenta Castro's family has not been able to put money into his canteen to afford him more than the free five-minute phone calls. Despite the limited time, Mr. Armenta Castro has taken advantage of the free calls and has spoken to Ashley and his family for at least five minutes every week since his arrest. "The single best predictor of successful release from prison is whether the former inmate has a family relationship to which he can return. Studies have shown that prisoners who maintain family ties during imprisonment are less likely to violate parole or commit future crimes after their release than prisoners without such ties."[10]

### III.   A JUST SENTENCE

Pursuant to 18 U.S.C. §3553(a)(2), the court must consider the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. Put simply, these four purposes of sentencing are punishment, deterrence, incapacitation, and rehabilitation. A sentence of 30 months will fulfill these goals.

Mr. Armenta Castro deserves to be punished for his conduct. Participating in the distribution of drugs in the United States has a negative impact on the community at large. So far, Mr. Armenta Castro's punishment extends beyond just his physical incarceration. While he has been incarcerated, he has experienced loss as a punishment, not only his loss of liberty but

---

10 *Id*. at 196-97.

the loss oft precious time and memories with his friends and family. While incarcerated, a friend of his has died which has reiterated to Mr. Armenta Castro that time with loved ones is precious.

The requested sentence will be punitive and serve as an adequate deterrent to Mr. Armenta Castro. Mr. Armenta Castro has been at the Wyatt Detention Facility for almost a year now. During his time there he has already completed a parenting class. He tried to complete an educational class, but it consisted largely of films and no one spoke to him. Mr. Armenta Castro was transferred to a workers block at Wyatt and currently works in the kitchen. Despite his efforts to make the most of his time, jail has been a scary place for Mr. Armenta Castro. The impact that imprisonment has had thus far on Mr. Armenta Castro has been significant. He knows if he re-offends, he will go back there, and for a much longer period of time at that. In terms of general deterrence, the recommended sentence shows others in the community that while the Court can show compassion for the defendant, there are still consequences that will be enforced when the law is broken.

The final two purposes of sentencing – incapacitation and rehabilitation – will also be served by the requested sentence. Whatever danger to the community Mr. Armenta Castro posed has been diminished. He has been removed from society. His eventual release will pose no danger to the public. The vocational training programs offered in the prison will serve little to no purpose for Mr. Armenta Castro as he already has an education and a career to return to, and most of the programs in the prison are oriented towards employment in the United States, with the certificates earned having little value in Mexico. Upon release, Mr. Armenta Castro will return and remain in Mexico with his family to focus on them and on continuing his blossoming career.

Finally, Mr. Armenta Castro will have a different experience in the Bureau of Prisons than a person with United States citizenship and a person who is fluent in English. He will have to rely on the poor translation of the few friendly inmates and corrections officers to communicate his most basic needs. Additionally, deportable non-citizen inmates, like Mr. Armenta Castro, in the BOP are provided significantly less access to treatment programs and fewer opportunities to participate in educational programming.[11] This makes the nature of their imprisonment markedly different, longer, and more difficult than U.S. citizens who are sentenced to terms of imprisonment. Despite deportable non-citizens making up nearly one-third of all sentenced federal prisoners,[12] the BOP has failed to meet the rehabilitative and release needs of these inmates with ICE detainers and removal orders. The deficiency – and in some cases wholescale unavailability – of rehabilitative programming in the BOP and the near non-existent release and reintegration supports for deportable defendants like Mr. Armenta Castro warrant a downward variance in sentencing.[13] Specifically, the BOP bars any inmate subject to an order of deportation from participating in the Federal Prison Industries' compensated job-training program, the Residential Drug Abuse Program, and even the faith-based Life Connections Program.[14] English as a Second Language ("ESL") programs are very limited, and serve roughly

---

11 Amy Kimpel, "Coordinating Community Reintegration Services for 'Deportable Alien' Defendants: A Moral and Financial Imperative," 70 Fla. L. Rev. 1019 (2019). *See also* BOP Program Statement, "English-as-a-Second Language Program," No. 5350.24, July 24, 1997, available at: https://www.bop.gov/policy/progstat/5350_024.pdf
12 Jacob Shuman, "Federal Prisons Don't Even Try to Rehabilitate the Undocumented," *The Marshall Project*, Oct. 17, 2017, citing 2014 data from the U.S. Sentencing Commission, available at: https://www.themarhsallproject.org/2017/10/17/federal-prisons-don-t-even-try-to-rehabilitate-the-undocumented.
13 Even if, for example, Mr. Armenta Castro is only presently subject to an immigration detainer as opposed to a formal order of deportation, his lack of legal status and his conviction in this case make him deportable, and counsel fully expects an order of deportation to enter and Mr. Armenta Castro to be deported to Mexico. *See* 18 U.S.C. § 3632(D)(4)(E)(ii) (ensuring that those deportable BOP prisoners seeking to apply earned time credits are subject to expedited removal proceedings as "early as practicable during the prisoner's incarceration.")
14 Shuman, note 11, supra, citing the applicable CFRs and program statements that bar deportable non-citizens from participating in these respective programs. See also BOP Operations Memorandum re: Life Connections Program, March 23, 2013 (excluding anyone with a deportation order), available at: https://www.bop.gov/policy/om/002_2012.pdf

only 1.5 percent of BOP inmates, despite the growing population of Spanish speaking inmates.[15] Deportable non-citizen inmates, like Mr. Armenta Castro, are considered "exempt from [the requirement to engage in BOP literacy and ESL programs] – meaning that facility resources are often not available to give [them] education access [and] [o]ccupational education programs only allow participation of 'deportable aliens' if resources permit, after giving priority to other inmates."[16] Mr. Armenta Castro understands very little spoken English and cannot read or write in English. As noted above, he has taken advantage of the limited opportunities to engage in programming during his pretrial detention.

With respect to reductions in sentence or step-down opportunities, deportable non-citizen inmates in the BOP are ineligible for the BOP's Release Preparation Program,[17] for early release to residential reentry centers, for release to home confinement and for earned time credits under the First Step Act. *See* 18 U.S.C. § 3632(d)(4)(E). Perhaps because they are not being prepared for release back into the U.S., but to their own respective countries, deportable non-citizen inmates also receive substantially less in release gratuities than U.S. citizen inmates released from BOP.[18] Some scholars have advocated for the development of "specific programs designed to prepare incarcerated individuals facing deportation for their release in their countries of origin."[19] Until such programs and supports are developed, however, this Court should consider the lack of rehabilitative programming and release supports for inmates like Mr. Armenta Castro. *See* 18 U.S.C. § 3553(a)(2)(D); *see also e.g. Untied States v. Zapata-Trevino*, 378 F. Supp. 2d

---

[15] BOP Education Program Assessment, Final Report, June 29, 2016, Bronner Group, LLC, pg. v, available at: https://www.justice.gov/archives/dag/page/file/914026/download
[16] Kimpel, note 10, supra at 1029.
[17] BOP Assessment, note 14, supra at 41.
[18] Kimpel, note 10, supra at 1038-39 (noting that while the BOP can award up to $500 to U.S. citizens upon release for suitable clothing, transportation, and buffer funds until the inmate finds work or receives other funds, deportable aliens are given $10). *See also* BOP Program Statement, "Release Gratuities, Transportation, and Clothing," No. 5873.06, August 6, 2003, pg.5, available at: https://www.bop.gov/policy/progstat/5873_006.pdf
[19] Kimpel, note 10, supra at 1029-30.

1321, 1328 (D.N.M. 2005) (in sentencing, the court took into consideration that the defendant would not be eligible for early release "[b]ecause of his immigration status [and] may not be eligible for certain Bureau of Prisons programming, and must be placed, at the minimum, in a low-security facility rather than at a more relaxed "camp.").

Finally, Mr. Armenta Castro's detention will be longer than any sentence imposed by the Court. At its conclusion, Mr. Armenta will not be freed; he will be transferred to an ICE detention facility where he will await deportation, a process that is indefinite and can take weeks or months to effectuate. This is also grounds for a variance that the Court may take into consideration. "Under appropriate circumstances, a defendant's potential deportation may properly be considered as part of a broader assessment of his history and characteristics pursuant to section 3553(a)(1)" *United States v. Hercules*, 947 F.3d 6 (1st Cir. 2020). We suggest to the Court that those appropriate circumstances, specifically the certainty of Mr. Armenta Castro's deportation given his lack of any status in the United States, permit the Court to consider his deportation as a basis to vary from the guideline range.

## CONCLUSION

For these reasons, Joel Armenta Castro asks that he be sentenced to a prison term of 30 months, with 1 year of supervised release to follow.

JOEL ARMENTA CASTRO
By his attorneys,

*/s/ Jessica P. Thrall*
Jessica P. Thrall, BBO #670412
Federal Defender Office
51 Sleeper Street, 5th Floor
Boston, MA  02210
Tel: 617-223-8061

*/s/ Aziza Hawthorne*

9

Aziza Hawthorne, BBO #709255  
Federal Defender Office  
51 Sleeper Street, 5th Floor  
Boston, MA  02210  
Tel: 617-223-8061

## CERTIFICATE OF SERVICE

      I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on September 21, 2023.

<i>/s/ Jessica P. Thrall</i>  
Jessica P. Thrall

10